916 So.2d 763 (2005)
FLORIDA DEPARTMENT OF STATE, DIVISION OF ELECTIONS, Appellant,
v.
Joseph MARTIN, et al., Appellees.
No. SC04-2265.
Supreme Court of Florida.
November 10, 2005.
*765 Charles J. Crist, Jr., Attorney General, Christopher M. Kise, Solicitor General, and Steven Todd Gold, Deputy Solicitor General, Tallahassee, FL, for Appellant.
Joseph Martin, Pro se, West Palm Beach, FL, for Appellee.
PARIENTE, C.J.
We have on appeal Department of State, Division of Elections v. Martin, 885 So.2d 453 (Fla. 1st DCA 2004), in which the First District Court of Appeal declared section 101.253(2), Florida Statutes (2004), unconstitutional. We have mandatory jurisdiction. See art. V, § 3(b)(1), Fla. Const. The issue in this case is whether section 101.253(2), which gives the Department of State absolute discretion to allow a candidate to withdraw after the forty-second day before an election, violates the separation of powers principle set forth in article II, section 3 of the Florida Constitution. We affirm the First District and hold that section 101.253(2) is an unconstitutional violation of the separation of powers under article II, section 3 because the Legislature has impermissibly delegated to the executive branch absolute, unfettered discretion to determine whether to grant or deny a candidate's request to withdraw after the forty-second day before an election.

FACTS AND PROCEDURAL HISTORY
James R. Stork qualified with the Department of State, Division of Elections (the Department) as the Democratic Party candidate for the Florida Congressional District 22 seat in the November 2, 2004, general election. On September 23, 2004, forty days before the election, the Department received a sworn notice from Stork seeking to withdraw as a candidate. On September 29, 2004, the Department, relying on section 101.253(2), notified Stork that "in the interest of avoiding disruption and confusion," his request to withdraw would be denied. Martin, 885 So.2d at 454. This in effect left the Democratic Party without the ability to substitute a candidate in his place prior to the election. Thereafter, members of the Congressional District 22 Democratic Party Executive Committee (Executive Committee), the appellees in this case, sought a mandatory injunction requiring the Department to declare that a vacancy had been created by Stork's withdrawal and to comply with section 100.111(4)(b), Florida Statutes (2004). This provision requires the Department to place on the ballot the name of a replacement candidate that is provided by the party's executive committee at least twenty-one days before the election.
At the hearing on the Executive Committee's request for injunctive relief, the Department acknowledged that on or before the forty-second day prior to an election, withdrawal of a candidate is a matter of right under section 101.253(2). The Department argued, however, that when a candidate seeks to withdraw after the forty-second day before an election, it has the absolute discretion under section *766 101.253(2) to grant or deny a request for withdrawal. In rejecting the Department's arguments, the trial court stated that "[t]o read Section 101.253(2) as the Department urges would essentially render Section 100.111(4)(b) meaningless." Martin v. Dep't of State, Div. of Elections, No. 04CA2400, order at 9 (Fla.2d Cir. Ct. order filed Oct. 8, 2004). Because section 100.111(4)(b) was enacted after section 101.253(2), the trial court concluded that the Legislature intended that section 100.111(4)(b) control the procedure for allowing a candidate's withdrawal and filling a vacancy in nomination. The trial court therefore entered a final order granting injunctive relief in favor of the Executive Committee.
The Department appealed the trial court's order to the First District.[1] In affirming the trial court's order, the First District held that section 101.253(2) unconstitutionally delegates legislative authority in violation of article II, section 3. The First District concluded that section 101.253(2) does not provide any criteria or standards to guide the Department in the exercise of the power delegated under the statute, but rather "vests unbridled discretion in the Department" to determine whether a candidate should be permitted to withdraw where the sworn notice was received fewer than forty-two days before a general election. Martin, 885 So.2d at 458. The First District determined that severing the offending portion of subsection (2) from the statute "would create an irreconcilable conflict between the remaining [portion] of subsection (2) and subsection (3), and possibly between subsection (2) and section 100.111(4)(b) as well." Id. Thus, the First District declared section 101.253(2) unconstitutional in its entirety. See id.

ANALYSIS
The issue before the Court is whether section 101.253(2) violates article II, section 3 of the Florida Constitution. "We review de novo a district court decision declaring a statute unconstitutional." Fla. Dep't of Children & Families v. F.L., 880 So.2d 602, 607 (Fla.2004). In resolving this issue, we begin by reviewing whether and to what extent sections 101.253(2) and 100.111(4)(b) relate to and may be reconciled with one another. Next, we review article II, section 3 of the Florida Constitution, as well as case law addressing the constitutionality of statutory provisions under the nondelegation doctrine of article II, section 3. We then analyze the constitutionality of section 101.253(2). Finally, we decide whether the unconstitutional portion of section 101.253(2) may be severed from the remainder of the statute.

I. Interplay of Sections 101.253(2) and 100.111(4)(b), Florida Statutes (2004)
In 1895, the Legislature first enacted statutory requirements governing placement of a candidate's name on an election ballot. See ch. 4328, § 30, Laws of Fla. (1895).[2] This statutory provision eventually *767 became section 101.253(2). See ch. 65-378, § 9, Laws of Fla. Section 101.253(2) governs those instances in which a candidate's name will not be printed on an election ballot and provides:
No candidate's name, which candidate is required to qualify with the Department of State for any primary or general election, shall be printed on the ballot if such candidate has notified the Department of State in writing, under oath, on or before the 42nd day before the election that the candidate will not accept the nomination or office for which he or she filed qualification papers. The Department of State may in its discretion allow such a candidate to withdraw after the 42nd day before an election upon receipt of a written notice, sworn to under oath, that the candidate will not accept the nomination or office for which he or she qualified.

(Emphasis supplied.)
Section 100.111 was enacted in 1951, and relates to filling vacancies in governmental offices. See ch. 26870, § 4, Laws of Fla. (1951). The statute was amended by the Legislature in 1977, see ch. 77-175, § 12, at 942-45, Laws of Florida, "for the sake of clarity and to cover certain vacancies which had not been addressed previously." Fla. S. Comm. on Judiciary-Civ., CS for SB 563 (1977) Staff Analysis 2 (June 2, 1977) (available at Fla. Dep't of State, State Archives, ser. 18, carton 1284, Tallahassee, Fla.). The 1977 amendment to section 100.111 resulted in the statutory language set forth in section 100.111(4)(b).[3] Section 100.111(4) governs the procedure for filling vacancies resulting from the death, resignation, withdrawal, or removal of a candidate. See § 100.111(4)(a), Fla. Stat. (2004). Section 100.111(4)(b) addresses vacancies that occur later than September 15 or less than twenty-one days prior to an election, and provides in full:

If the vacancy in nomination occurs later than September 15, or if the vacancy in nomination occurs with respect to a candidate of a minor political party which has obtained a position on the ballot, no special primary election shall be held and the Department of State shall notify the chair of the appropriate state, district, or county political party executive committee of such party; and, within 7 days, the chair shall call a meeting of his or her executive committee to consider designation of a nominee to fill the vacancy. The name of any person so designated shall be submitted to the *768 Department of State within 14 days of notice to the chair in order that the person designated may have his or her name printed or otherwise placed on the ballot of the ensuing general election, but in no event shall the supervisor of elections be required to place on a ballot a name submitted less than 21 days prior to the election. If the vacancy occurs less than 21 days prior to the election, the person designated by the political party will replace the former party nominee even though the former party nominee's name will be on the ballot. Any ballots cast for the former party nominee will be counted for the person designated by the political party to replace the former party nominee. If there is no opposition to the party nominee, the person designated by the political party to replace the former party nominee will be elected to office at the general election. For purposes of this paragraph, the term "district political party executive committee" means the members of the state executive committee of a political party from those counties comprising the area involving a district office.
(Emphasis supplied.)
Both sections 101.253(2) and 100.111(4)(b) relate to Florida's election process. The doctrine of in pari materia is a principle of statutory construction that requires that statutes relating to the same subject or object be construed together to harmonize the statutes and to give effect to the Legislature's intent. See Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992) ("Where possible, courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another."). In addition, we must construe sections 101.253(2) and 100.111(4)(b) "consistent with the important constitutional rights that are involved: `[T]he right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively.'" Reform Party of Florida v. Black, 885 So.2d 303, 311 (Fla.2004) (quoting Williams v. Rhodes, 393 U.S. 23, 30, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968)) (alteration in original).
The First District determined that section 101.253(2) governs when and how a candidate may seek to withdraw, whereas section 100.111(4)(b) governs the process to be used to fill a vacancy that results when either the candidate submits a timely request to withdraw or the Department, in its discretion, grants an untimely request to withdraw. See Martin, 885 So.2d at 456-57. Therefore, the First District concluded that the Department does have discretion to deny withdrawals after the forty-second day before an election. However, the First District concluded that the lack of standards to guide the Department's discretion concerning a request for withdrawal rendered section 101.253(2) unconstitutional. The Department agrees with the First District's conclusion as to the interplay of sections 101.253(2) and 100.111(4)(b). The Department disagrees, however, that section 101.253(2) is unconstitutional.
We conclude that reading section 101.253(2) together with section 100.111(4)(b) supports the First District's interpretation of the interplay of these statutory provisions. Construing the statutes in any other manner renders section 101.253(2) meaningless. See Hechtman v. Nations Title Ins. of New York, 840 So.2d 993, 996 (Fla.2003) ("It is an elementary principle of statutory construction that significance and effect must be given to every word, phrase, sentence, and part of the statute if possible and words in a statute *769 should not be construed as mere surplusage."); State v. Goode, 830 So.2d 817, 824 (Fla.2002) ("[A] basic rule of statutory construction provides that the Legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless."). The trial court interpreted section 100.111(4)(b) as eliminating the Department's discretion under section 101.253(2) to deny withdrawals after the forty-second day before an election. However, if the Department does not have discretion to deny withdrawals after the forty-second day, there is no need for the Legislature to state in the first sentence of section 101.253(2) that withdrawals must be allowed if received on or before the forty-second day before an election because withdrawals would have to be granted regardless of when a candidate's request is received. See § 101.253(2), Fla. Stat. (2004) ("No candidate's name . . . shall be printed on the ballot if such candidate has notified the Department of State . . . on or before the 42nd day before the election. . . .") (emphasis supplied). Accordingly, we conclude that section 101.253(2) clearly intended to give the Department discretion to grant or deny a request for withdrawal and that section 100.111(4)(b) comes into play only when withdrawal is allowed.

II. Separation of Powers

A. Article II, Section 3 of the Florida Constitution
Having concluded that section 101.253(2) intended to give the Department discretion, we must determine whether the grant of the discretion is so broad as to violate the separation of powers doctrine of article II, section 3. Article II, section 3 creates the three branches of government and prohibits one branch from exercising the powers of the other two branches:
Branches of government.  The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.
This Court has traditionally applied a "strict separation of powers doctrine," State v. Cotton, 769 So.2d 345, 353 (Fla. 2000), which "encompasses two fundamental prohibitions." Chiles v. Children A, B, C, D, E, & F, 589 So.2d 260, 264 (Fla.1991). "The first is that no branch may encroach upon the powers of another. The second is that no branch may delegate to another branch its constitutionally assigned power." Id. (citation omitted). In Bush v. Schiavo, 885 So.2d 321 (Fla.2004), cert. denied, 543 U.S. 1121, 125 S.Ct. 1086, 160 L.Ed.2d 1069 (2005), we recently addressed this second prohibition and explained:
The Legislature is permitted to transfer subordinate functions "to permit administration of legislative policy by an agency with the expertise and flexibility to deal with complex and fluid conditions." Microtel, Inc. v. Fla. Public Serv. Comm'n, 464 So.2d 1189, 1191 (Fla. 1985). However, under article II, section 3 of the constitution the Legislature "may not delegate the power to enact a law or the right to exercise unrestricted discretion in applying the law." Sims v. State, 754 So.2d 657, 668 (Fla.2000). This prohibition, known as the nondelegation doctrine, requires that "fundamental and primary policy decisions . . . be made by members of the legislature who are elected to perform those tasks, and [that the] administration of legislative programs must be pursuant to some minimal standards and guidelines ascertainable by reference to the enactment establishing the program." Askew v. Cross Key Waterways, 372 So.2d 913, *770 925 (Fla.1978); see also Avatar Dev. Corp. v. State; 723 So.2d 199, 202 (Fla. 1998) (citing Askew with approval). In other words, statutes granting power to the executive branch "must clearly announce adequate standards to guide . . . in the execution of the powers delegated. The statute must so clearly define the power delegated that the [executive] is precluded from acting through whim, showing favoritism, or exercising unbridled discretion." Lewis v. Bank of Pasco County, 346 So.2d 53, 55-56 (Fla. 1976).
Id. at 332 (alterations in original). The requirement that the Legislature delineate adequate standards enables courts to perform their constitutional duties. The failure to set forth adequate standards precludes a court from determining whether the executive branch is acting in accord with the Legislature's intent. See Askew, 372 So.2d at 918-19 ("When legislation is so lacking in guidelines that neither the agency nor the courts can determine whether the agency is carrying out the intent of the legislature in its conduct, then, in fact, the agency becomes the lawgiver rather than the administrator of the law.").

B. Delegation of Legislative Authority
In several decisions, we have ruled unconstitutional laws that delegated legislative authority with insufficient standards guiding the exercise of this authority by the executive branch. In Lewis, this Court held that a statute allowing bank or trust company records to be made public upon the consent of the Comptroller, as head of the Department of Banking and Finance, constituted an unconstitutional delegation of legislative authority in violation of article II, section 3. See 346 So.2d at 55. The statute at issue in Lewis provided in pertinent part as follows:
Division records. 
All bank or trust company applications, investigation reports, examination reports, and related information, including any duly authorized copies in possession of any banking organization, foreign banking corporation, or any other person or agency, shall be confidential communications, other than such documents as are required by law to be published, and shall not be made public unless with the consent of the department, pursuant to a court order, or in response to legislative subpoena as provided by law.
Id. at 54 (quoting § 658.10(1), Fla. Stat. (1976)) (emphasis omitted). In holding section 658.10(1) unconstitutional, this Court approved the reasoning of the circuit court judge who found that "[t]here are no restrictions, limitations, or guidelines provided in the statute to limit or regulate the action of the department in granting . . . [or] withholding consent." Id. at 55.
Similarly, in Orr v. Trask, 464 So.2d 131 (Fla.1985), the Court concluded that a proviso authorizing the Governor to reduce the number of deputy commissioner positions violated article II, section 3. The proviso in question stated that
[f]unds and positions in Specific Appropriation 1203 contemplate the elimination of one Deputy Commissioner by July 1, 1983 and three Deputy Commissioners by December 31, 1983; one from District J and three from District K.
Id. at 133 (alteration in original). The Court determined that the proviso was unconstitutional because it "furnished no guidance to the Governor as to the criteria to be used in reducing the number of deputies," but rather, left the selection of which deputies should be eliminated "entirely to the unbridled discretion of the executive branch." Id. at 134.
*771 More recently, in Schiavo, this Court held that chapter 2003-418, Laws of Florida, was an unconstitutional delegation of legislative authority in violation of article II, section 3. See 885 So.2d at 336. Chapter 2003-418 provided in pertinent part:
Section 1. (1) The Governor shall have the authority to issue a one-time stay to prevent the withholding of nutrition and hydration from a patient if, as of October 15, 2003:
(a) That patient has no written advance directive;
(b) The court has found that patient to be in a persistent vegetative state;
(c) That patient has had nutrition and hydration withheld; and
(d) A member of that patient's family has challenged the withholding of nutrition and hydration.
(2) The Governor's authority to issue the stay expires 15 days after the effective date of this act . . . . The Governor may lift the stay authorized under this act at any time. . . .
Id. at 328-29. In holding chapter 2003-418 unconstitutional, the Court explained that chapter 2003-418 failed to provide any standards by which the Governor could decide whether to issue a stay and how long a stay should remain in effect. See id. at 334. The Court stated that "[t]his absolute, unfettered discretion to decide whether to issue and when to lift a stay makes the Governor's decision virtually unreviewable." Id.

C. The Constitutionality of Section 101.253(2)
Similar to the statutes and proviso at issue in Lewis, Orr, and Schiavo, section 101.253(2) does not delineate any standards or criteria to guide the Department in exercising the authority delegated under the statute. This provision merely states that the Department "may in its discretion allow such a candidate to withdraw after the 42nd day before an election." Section 101.253(2) does not articulate any factors to be considered in determining whether withdrawal should be granted or denied, nor does it indicate the legislative purpose to be served in granting or denying a candidate's request to withdraw. Cf. Avatar Dev. Corp., 723 So.2d at 207 ("While chapter 403 grants [the Department of Environmental Protection] the authority to determine conditions upon which permits may be issued, that power is limited to conditions necessary to effectuate the Legislature's specific policy."); Microtel, Inc., 464 So.2d at 1191 (concluding that statute that required commission to determine whether to issue certificate and guided commission's discretion by providing that certification must be in the public interest evidenced sufficient standards and guidelines under article II, section 3); Straughn v. O'Riordan, 338 So.2d 832, 833-34 (Fla. 1976) (concluding that statute directing the Department of Revenue to require a bond from sales tax registrants "in all cases where it is necessary to insure compliance with the provisions of this chapter" was a constitutional delegation of legislative authority under article II, section 3).
The Department concedes that section 101.253(2) does not set forth any standards or guidelines to limit or regulate the decision to grant or deny a candidate's request to withdraw after the forty-second day before an election. The Department asserts, however, that section 97.012, Florida Statutes (2004), which delineates the responsibilities of the Secretary of State, limits the Department's discretion under section 101.253(2). Specifically, the Department asserts that section 97.012 appoints the Secretary of State as the chief elections officer and obligates the Secretary to obtain and maintain uniformity in the application, operation, and interpretation of the *772 election laws. The Department asserts that its discretion is therefore guided by the stated goal of, and requirement for, orderly elections.
We reject the Department's assertions. Section 101.253(2) affords discretion to determine whether to permit a candidate to withdraw solely to the Department, not the Secretary of State. Thus, the responsibilities imposed on the Secretary by section 97.012 are inapplicable to the Department in the exercise of its discretion under section 101.253(2). Even assuming that the Department's discretion is limited by the requirement for orderly elections provided in section 97.012, this requirement does not set forth adequate standards to guide the Department under article II, section 3. According to the Department, allowing withdrawal after the forty-second day before an election jeopardizes an orderly election because at that point, "it would be extremely difficult to change the ballots so close to the election, and . . . any request to do so would be disruptive." Martin, 885 So.2d at 455. However, the Department acknowledges that these same problems exist when a request to withdraw is timely received. See id.
The Department also asserts that section 101.253(2) should be read in pari materia with the Florida Election Code, chapters 97 through 106, Florida Statutes (2004) (Code). According to the Department, the Code provides the standards by which the Department determines whether a request to withdraw is reasonable and does not interfere with legislative intent by jeopardizing an orderly election or imposing an undue burden on the Department in ensuring an orderly election. In support of this assertion, the Department cites Brown v. Apalachee Regional Planning Council, 560 So.2d 782 (Fla.1990), in which the Court analyzed related statutes in discerning whether an administrative rule contained sufficient criteria to assist the agency in levying fees.
In Brown, the Court upheld the constitutionality of an administrative rule that allowed an agency to levy fees against an applicant seeking a development of regional impact review (DRI). The Court explained that the statutes upon which the rule was based
set forth, in considerable detail specific criteria to be used by the [administrative agency] in conducting DRI reviews: which development projects must be reviewed, when review is to occur, who is to conduct review, and how review is to be performed. Under these circumstances, given the highly technical nature of the DRI review process, details relating to the imposition of a cost-based review fee can be viewed as a technical matter of implementation rather than a fundamental policy decision.
Brown, 560 So.2d at 785 (citation omitted).
In contrast to the statutory provisions in Brown, the Florida Election Code relates generally to Florida's election process and does not provide standards and criteria to be utilized by the Department in exercising its discretion under section 101.253(2). The Code does not set forth any restrictions or specific criteria governing the Department's response to requests to withdraw after the forty-second day before an election. Nor does section 101.253(2) require that the Department's decision be made in conformity with the legislative scheme and purpose of the Code. In fact, there is nothing in section 101.253(2) that indicates that the Legislature intended to limit the Department's discretion in any way.
Further, unlike the administrative rule at issue in Brown, section 101.253(2) cannot be viewed as a "technical matter of implementation rather than a fundamental policy decision." Id. Although the election *773 process in general is subject to technical procedures, there is nothing "technical" about determining whether to permit a candidate to withdraw under section 101.253(2). The Department's decision concerning withdrawal is more akin to a policy decision, and we therefore conclude that Brown is inapplicable to this case.
In Askew, we recognized that the "specificity of standards and guidelines may depend upon the subject matter dealt with and the degree of difficulty involved in articulating finite standards." 372 So.2d at 918. However, we have also made clear that "[e]ven where a general approach would be more practical than a detailed scheme of legislation, enactments may not be drafted in terms so general and unrestrictive that administrators are left without standards for the guidance of their official acts." Schiavo, 885 So.2d at 333 (quoting State, Dep't of Citrus v. Griffin, 239 So.2d 577, 581 (Fla.1970)) (alteration in original).
Although it would be impossible for the Legislature to specify every circumstance under which the Department may permit a candidate to withdraw after the forty-second day before an election, the Legislature must provide adequate standards to guide the Department in making a decision concerning whether withdrawal will be permitted. Otherwise, there is nothing to prevent the Department from making an arbitrary decision under section 101.253(2). We conclude that the second sentence of section 101.253(2) violates article II, section 3 because the statute is currently "drafted in terms so general and unrestrictive that [the Department is] left without standards for the guidance of [its] official acts." Id. (quoting Griffin, 239 So.2d at 581).

III. Severability
We must next determine whether the constitutionally invalid second sentence of section 101.253(2) may be severed from the remainder of the statute or whether it is essential to the statute's operation. "Severability is a judicial doctrine recognizing the obligation of the judiciary to uphold the constitutionality of legislative enactments where it is possible to strike only the unconstitutional portions." Ray v. Mortham, 742 So.2d 1276, 1280 (Fla. 1999). The doctrine of severability is "derived from the respect of the judiciary for the separation of powers, and is `designed to show great deference to the legislative prerogative to enact laws.'" Id. (quoting Schmitt v. State, 590 So.2d 404, 415 (Fla. 1991)). In Smith v. Department of Insurance, 507 So.2d 1080, 1089 (Fla.1987), we recognized that courts should be mindful of the Legislature's intent in determining whether an unconstitutional provision can be severed from the remainder of a statute. If the legislative intent of the statute cannot be fulfilled absent the unconstitutional provision, the statute as a whole must be declared invalid.
Prior to 1965, election officials did not have discretion to grant or deny a candidate's request to withdraw. See ch. 26870, § 3, Laws of Fla. (1951). Rather, withdrawal was required upon written notice if received by a specified time. In 1965, the Legislature amended the election laws to allow for the exercise of discretion in granting or denying a candidate's request for withdrawal that was received after the time period specified in the statute. See ch. 65-378, § 9, Laws of Fla.
The Department urges that the second sentence of section 101.253(2) can be severed from the remainder of the statute and that severance of this portion would still accomplish the Legislature's intent. We disagree. Were we to sever the second sentence of section 101.253(2), the statute would provide that only those candidates whose notifications were received *774 on or before the forty-second day before an election would be allowed to withdraw. Candidates who sought to withdraw after the forty-second day would not be permitted to withdraw under any circumstance. Severing the statute in this manner is completely inconsistent with the Legislature's intent to allow for withdrawal after the time period specified in the statute.
Further, severing the statute interferes with a political party's access to the election ballot and would place the political party in a worse position than the current statute, which leaves the question of withdrawal to the Department's discretion. In Reform Party, we observed "[t]he right of individuals to associate for the advancement of political beliefs," and explained that this important constitutional right means little if a political party's access to the election ballot is interfered with. 885 So.2d at 311 (quoting Williams, 393 U.S. at 90, 89 S.Ct. 5). Thus, we conclude that the second sentence of section 101.253(2) cannot be severed from the remainder of the statute because it would be contrary to the Legislature's intent.[4]

CONCLUSION
For the foregoing reasons, we conclude that section 101.253(2) vests the Department with absolute, unfettered discretion to decide whether to grant or deny a candidate's request to withdraw after the forty-second day before an election. Thus, we hold that section 101.253(2) is an unconstitutional delegation of legislative authority in violation of the separation of powers set forth in article II, section 3. We affirm the First District's decision below holding section 101.253(2) unconstitutional.
It is so ordered.
WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Upon suggestion of the Executive Committee, the First District certified the case to this Court as a matter of great public importance. This Court entered an order declining to exercise jurisdiction and remanded the case to the First District. See Fla. Dep't of State, Div. of Elections v. Martin, No. SC04-1980 (Fla. Oct. 13, 2004).
[2] Chapter 4328, section 30, provided in pertinent part:

The board of county commissioners of each county shall cause to be printed on the ballots to be used in their respective counties the names of all candidates who have been put in nomination by any caucus, convention, mass meeting, primary election or other assembly of any political party or faction in this State and certified and filed with them not more than sixty days nor less than twenty days previous to the day of election . . . . The board of county commissioners shall also cause to be printed upon said ballots the name of any qualified elector who has been requested to be a candidate for any office . . . when such petition has been filed with them not more than sixty days nor less than twenty days previous to the election . . . . The name of no person shall be printed upon the ballot who shall, not less than twenty days before the election, notify the board of county commissioners, in writing, acknowledged before an officer authorized by law to take acknowledgements, that he will not accept the nomination specified in the certificate of nomination or request of electors. Provided, however, That when any person who has been regularly nominated and who shall decline to run for the office to which he has been nominated, the party by which such person was nominated shall be allowed five days after such declination to run by such person, in which to substitute another candidate.
(Emphasis omitted.)
[3] At that time, this statutory language was set forth in section 100.111(3)(b). See ch. 77-175, § 12, Laws of Fla. However, section 100.111 was amended in 1983 to add a new subsection. See ch. 83-15, § 4, Laws of Fla. As a result of the 1983 amendment, section 100.111(3)(b) was renumbered to section 100.111(4)(b). See id.
[4] Because we conclude there is no meaningful way to sever section 101.253(2) and accomplish the Legislature's intent, we need not reach the issue of whether severance creates conflict with sections 101.253(3) or 100.111(4)(b).