WOLF, J.
 

 Appellant challenges a final order of the administrative law judge (ALJ) upholding the validity of Rule 14-10.007(2)(b) of the
 
 Florida Administrative Code.
 
 We conclude that Rule 14-10.007(2)(b), which allows the Florida Department of Transportation (FDOT) to revoke the license of a nonconforming advertising sign based on a change in the height above ground level (HAGL) of the sign, is not supported by a specific grant of legislative authority and is, thus, invalid.
 

 Appellant, Lamar Outdoor Advertising — Lakeland, is the owner of four billboard structures along Interstate 4(1-4). When a noise attenuation barrier was erected along 1^4, the visibility of these signs was diminished. Appellant then raised the HAGL of the signs to restore visibility. In response, FDOT issued Notices of Intent to Revoke the Sign Permits, asserting that under Rule 14-10.007(2)(b), a modification of the HAGL of a sign constituted an impermissible substantial change to a nonconforming sign.
 
 [1]
 
 Appellant’s petition for a permanent waiver or
 
 *801
 
 variance from the provisions of this rule was denied by FDOT. Appellant then filed a petition to determine the validity of Rule 14-10.007(2)(b). In support of this petition, appellant alleged the sections of the Florida Statutes which Rule 14-10.007 states that it implements, do not, in fact, provide the necessary authorization to promulgate the rule. The ALJ disagreed and found sections 479.02(1) and 339.05, Florida Statutes (2007), provide support for the rule and, thus, the ALJ denied the petition.
 

 Under section 120.52(8), Florida Statutes (2007), a rule by an administrative agency may be challenged as “an invalid exercise of delegated legislative authority,” meaning “action which goes beyond the powers, functions, and duties delegated by the Legislature.” Among the factors used to determine whether an administrative rule “is an invalid exercise of delegated legislative authority” are (1) whether “[t]he agency has exceeded its grant of rulemaking authority, citation to which is required by s. 120.54(3)(a)1.,” and (2) whether “[t]he rule enlarges, modifies, or contravenes the specific provisions of law implemented, citation to which is required by s. 120.54(3)(a)1.” § 120.52(8)(b), (c), Fla. Stat. (2007). Also, the last paragraph of section 120.52(8) includes general standards for challenging a rule and provides in pertinent part:
 

 A grant of rulemaking authority is necessary but not sufficient to allow an agency to adopt a rule; a specific law to be implemented is also required. An agency may adopt only rules that implement or interpret the specific powers and duties granted by the enabling statute. No agency shall have authority to adopt a rule only because it is reasonably related to the purpose of the enabling legislation and is not arbitrary and capricious or is within the agency’s class of powers and duties, nor shall an agency have the authority to implement statutory provisions setting forth general legislative intent or policy. Statutory language granting rulemaking authority or generally describing the powers and functions of an agency shall be construed to extend no further than implementing or interpreting the specific powers and duties conferred by the same statute.
 

 This “set of general standards [is] to be used in determining the validity of a rule in all cases.”
 
 Sw. Fla. Water Mgmt. Dist. v. Save the Manatee Club, Inc.,
 
 773 So.2d 594, 597-98 (Fla. 1st DCA 2000). This standard has been held to mean that
 

 agencies have rulemaking authority only where the Legislature has enacted a specific statute, and authorized the agency to implement it, and then only if the (proposed) rule implements or interprets specific powers or duties, as opposed to improvising in an area that can be said to fall only generally within some
 
 *802
 
 class of powers or duties the Legislature has conferred on the agency.
 

 Bd. of Trs. of the Internal Improvement Trust Fund v. Day Cruise Ass’n, Inc.,
 
 794 So.2d 696, 700 (Fla. 1st DCA 2001);
 
 see also Sw. Fla. Water Mgmt. Dist.,
 
 773 So.2d at 599 (Fla. 1st DCA 2000).
 

 First, we find the ALJ erred in determining that section 479.02 authorizes Rule 14-10.007(2)(b). Section 479.02(1) makes it “the duty of the department to:”
 

 Administer and enforce the provisions of this chapter and the agreement between the state and the United States Department of Transportation relating to the size, lighting, and spacing of signs in accordance with Title I of the Highway Beautification Act of 1965 and Title 23, United States Code, and federal regulations in effect as of the effective date of this act.
 

 (Emphasis added). FDOT asserted, and the ALJ held, that because section 479.02(1) authorizes FDOT to “administer and enforce” the Federal-State agreement in accordance with title I of the Highway Beautification Act and title 23 of the
 
 United States Code,
 
 as well as federal regulations, the provisions for regulating nonconforming signs found in 23 C.F.R. § 750.707 are included by reference and provide the necessary authority for Rule 14-10.007(2)(b).
 
 [2]
 
 Further, the ALJ held that because the State may determine for itself the line between maintenance and substantial change, and because section 479.02(1) allocates this determination to FDOT, section 479.02(1) provides the necessary support for Rule 14-10.007(2)(b). Section 479.02(1), however, limits the ability of the executive branch to enforce the federal regulations to only “size, lighting, and spacing.” Section 479.02(1), therefore, cannot provide the necessary authority for Rule 14-10.007(2)(b).
 

 In contrast to section 479.02(1), subsection (2) contains the word “height.” It provides in pertinent part that it is the duty of appellee to “regulate size, height, lighting, and spacing of signs permitted in zoned and unzoned commercial areas .... ” (emphasis added). Similarly, subsection (8) states in pertinent part: “The department shall maintain a database of sign inventory information such as sign location, size, height, and structure type .... ” (emphasis added).
 

 A subsection of a statute cannot be read in isolation; instead, it must be read “within the context of the entire section in order to ascertain legislative intent for the provision” and each statute “must be read as a whole with meaning ascribed to every portion and due regard given to the semantic and contextual interrelationship between its parts.” Fla.
 
 Dep’t of Envtl. Prot. v. ContractPoint Fla. Parks, LLC,
 
 986 So.2d 1260, 1265 (Fla.2008) (citations omitted). The “doctrine of
 
 in pari materia
 
 is a principle of statutory construction that requires that statutes relating to the same subject or object be construed together to harmonize the statutes and to give effect to the Legislature’s intent.”
 
 Fla. Dep’t of State, Div. of Elec
 
 
 *803
 

 tions v. Martin,
 
 916 So.2d 763, 768 (Fla.2005). Because subsection (1) of section 479.02 only mentions “size, lighting, and spacing” and subsection (2) deals with “size, height, lighting, and spacing,” while subsection (8) mentions “size, height, and structure type,” this indicates that the legislature intended to consider “size” and “height” separately.
 

 Similarly, Rule 14-10.006(1) of the
 
 Florida Administrative Code,
 
 a rule promulgated by FDOT, defines “size” in relation to the face of the sign, stating that the “maximum size limitations shall apply to each sign facing.” Overall height, rather than the mere height of the sign face, is discussed under the definition of “Sign Structure Height,” which states that the “height of a sign structure shall be measured from a point on the sign structure which is at the same elevation as the crown of the main-traveled way to the top of the highest sign face, excluding embellishments.” Fla. Admin. Code R. 14-10.006(5). Thus, a reference to “size” in the
 
 Florida Administrative Code
 
 does not include the overall height of a sign structure or the HAGL of a sign.
 
 [3]
 

 Second, we find the ALJ erred in determining that section 339.05 authorizes Rule 14-10.007(2)(b) on the basis that section 339.05, Florida Statutes (2007), provides specific support for the rule’s implementation. Rule 14-10.007 states it implements section 339.05, which provides that:
 

 The state hereby assents to the provisions of the Act of Congress approved July 11, 1916, known as the Federal Aid Law, which Act of Congress is entitled “An act to provide that the United States shall aid the states in the construction of rural post roads and for other purposes,” and assents to all subsequent amendments to such Act of Congress and any other act heretofore passed or that may be hereafter passed providing for federal aid to the states for the construction of highways and other related projects. The department is authorized to make application for the advancement of federal funds and to make all contracts and do all things necessary to cooperate with the United States Government in the construction of roads under the provisions of such Acts of Congress and all amendments thereto.
 

 (Emphasis added). FDOT asserts that the State stands to lose 10% of its federal highway funds if it does not maintain “effective control” of “outdoor advertising” under the Federal-State Agreement. Therefore, the FDOT asserts that section 339.05 authorizes Rule 14-10.007(2)(b) as a measure to maintain that control and to avoid a cut in the State’s federal highway funding. This argument is without merit because the Federal-State Agreement applies, by its very language, only to size, lighting, and spacing of signs. As previously determined, height is not contained under the term “size.”
 
 [4]
 

 Further, the plain language of section 339.05 states that it applies in the context of construction of roads. Regulation of a sign’s HAGL is not logically related to the construction of roads. Thus, section 339.05 cannot provide the required author
 
 *804
 
 ity for Rule 14-10.007(2)(b).
 
 See
 
 § 120.52(8), Fla. Stat.;
 
 see also Bd. of Trs. of the Internal Improvement Trust Fund,
 
 794 So.2d at 700. The decision of the ALJ upholding the challenged rule is REVERSED.
 

 WEBSTER and CLARK, JJ., concur.
 

 [1]
 

 . Rule 14-10.007 of the
 
 Florida Administrative Code
 
 reads in pertinent part:
 

 (1) A nonconforming sign must remain substantially the same as it was as of the date it became nonconforming.
 

 (2) Reasonable repair and maintenance of nonconforming signs, including change of advertising message, is permitted and is not a change which would terminate the nonconforming status.... The following are examples of modifications which do not constitute reasonable repair or maintenance, and which constitute substantial changes to a nonconfonning sign that will result in the loss of nonconforming status:
 

 
 *801
 
 ... (b) Modification that changes the area of the sign facing or the HAGL of the sign, however:
 

 1. Reduction in the area of the sign facing or the HAGL of the sign, which reduction is required by an ordinance adopted by a local governmental entity with jurisdiction over the sign, is not a change which would terminate the nonconforming status of the sign, provided like materials are used and no enhancements are made to the visibility of the sign.
 

 2. Embellishments may be added to nonconforming signs subject to the limitations regarding size of sign facing, and provided they do not exceed 10% of the area of the sign facing prior to the addition of the embellishment;
 

 ... Specific Authority 334.044(2), 479.02(7) FS. Law Implemented 339.05, 479.02, 479.07(9) FS.
 

 [2]
 

 . Section 750.707 states in pertinent part:
 

 ' (d) Maintenance and Continuance. In order to maintain and continue a nonconforming sign, the following conditions apply:
 

 ... (5) The sign must remain substantially the same as it was on the effective date of the State law or regulations. Reasonable repair and maintenance of the sign, including a change of advertising message, is not a change which would terminate nonconforming rights. Each State shall develop its own criteria to determine when customary maintenance ceases and a substantial change has occurred which would terminate nonconforming rights.
 

 23 C.F.R. § 750.707 (emphasis added).
 

 [3]
 

 . Similarly, the Federal-State agreement of 1972, referred to in section 479.02(1), provides only for the State to regulate the size, lighting, and spacing of signs.
 

 [4]
 

 . The question of compliance with federal standards must be addressed by the Legislature. Federal regulations or interpretations passed subsequent to a state statute cannot provide the authority for executive rulemak-ing.
 
 State v. Welch,
 
 279 So.2d 11 (Fla.1973);
 
 see also Abbott Labs. v. Mylan Pharm., Inc.,
 
 15 So.3d 642 (Fla. 1st DCA 2009).