THOMAS, J.
This ease involves the appeal of an unsuccessful constitutional challenge brought by Appellants seeking a declaration that the “Student Success Act” passed *591 by the 2011 Legislature[1] violates Article II, section 3, of the Florida Constitution by invalidly delegating legislative powers to the Executive Branch. Appellants carry a heavy burden of persuasion:
Although the Court’s review [of a claim that a statute is unconstitutional] is de novo, statutes come clothed with a presumption of constitutionality and must be construed whenever possible to effect a constitutional outcome. As this Court has stated, ‘[sjhould any doubt exist that an act is in violation ... of any constitutional provision, the presumption is in favor of constitutionality. To overcome the presumption, the invalidity must appear beyond reasonable doubt, for it must be assumed the legislature intended to enact a valid law.’
Crist v. Fla. Ass’n of Criminal Defense Lawyers, Inc., 978 So.2d 134, 139 (Fla.2008) (quoting Franklin v. State, 887 So.2d 1063, 1073 (Fla.2004) (emphasis added; citations omitted)).
Appellants have not established that the legislature delegated core legislative authority to the Board of Education and intended to violate the separation of powers requirement of Article II, section 3 of the Florida Constitution. Thus, we hold that Appellants have failed to show beyond a reasonable doubt that the legislature violated the constitution by enacting the Student Success Act, and we affirm the trial court’s decision finding the Act constitutional.
Under our precedent in Florida Teaching Profession-National Education Association v. Turlington, 490 So.2d 142 (Fla. 1st DCA 1986), this statute confers permissible discretion to allow the Board of Education to implement a highly technical matter regarding the evaluation of teachers, not a fundamental policy decision. In Turlington, this court rejected a nondelegation challenge to a statute that was similar to the statute here in terms of the subject matter and discretion allowed to the administrative agency. In Turlington, the statute granted a range of decisions to the education agency for determining teacher evaluations for pay incentives and incentive funding for schools. Id. at 142-45. The statute in Turlington, like here, did not dictate to the Board of Education every conceivable variable to apply, but instead allowed school officials and the Board of Education to apply improvements in student test scores to determine whether a school merited the incentive status. Furthermore, this court rejected the arguments that because the statute allowed principals to “confer extra evaluation points,” it violated Article II, section 3 of the Florida Constitution. Id. at 146.
Under the Student Success Act, the legislature revised certain requirements for evaluating classroom teachers and other personnel, which in part required that at least fifty percent of a teacher’s evaluation must be based on “student learning growth.” This factor of measuring student improvement is assessed statewide based on a formula adopted by the Commissioner of Education, unless the subject matter is better evaluated by an “equally appropriate formula” adopted by the local school district. §§ 1012.34(3)(a) & 1012.34(7), Fla. *592 Stat. (2011).[2]
The Student Success Act requires that teacher evaluations must be based on four levels of performance: highly effective; effective; needs improvement or developing; and unsatisfactory. § 1012.34(2)(e), Fla. Stat. (2011). In addition, the Board of Education is directed to adopt rules which establish “sufficient [consistent] differentiation” in performance levels, including the student learning growth standard, which “if not met” will render a teacher’s performance level unsatisfactory. This legislation further requires that the student learning growth standard must be met before a teacher can be classified as attaining a “highly effective” or “effective” rating. § 1012.34(8), Fla. Stat. (2011). These classifications affect teachers’ eligibility for salary increases, promotions, placements, transfers and layoffs. §§ 1012.22(l)(c) & (e); 1012.28(6); 1012.33(5), Fla. Stat. (2011).
The Commissioner of Education must “consult with experts, instructional personnel, school administrators, and education stakeholders in developing the criteria for the performance levels.” § 1012.34(2)(e), Fla. Stat. (2011). The critical component, student learning growth, must be developed by the Commissioner of Education, based on standardized test scores and other factors, including a student’s past academic performance. The Commissioner is prohibited from establishing different for-mulae based on gender, race, ethnicity, or socioeconomic status.
When creating the student learning growth criterion, the Board of Education is not free to invent factors out of whole cloth; instead, it must utilize the described components. The statute provides that this criterion will be based on standardized test scores, where possible, and other factors, such as a student’s past performance and related measures for areas not subject to standardized test scores. We are not determining whether the statute is perfect or comprehensive in its direction to the Board of Education, but rather whether the statute grants the Board of Education “unbridled discretion” to enact fundamental policy choices. This it does not do.
The statute provides the Board of Education with sufficient direction to implement the technical aspects of the law in accordance with the legislature’s express policy goals to “promote enhanced academic success and funding efficiency of educational delivery systems by aligning responsibility with accountability ... [and to ensure that the] guiding principles for Florida’s K-20 education system are ... student-centered in every facet [and] provide[ ] for local operational flexibility while promoting accountability for student achievement and improvement.” §§ 1000.02(1) & (2), Fla. Stat. (2011) (emphasis added). In addition to these overarching principles, in section 1012.34(l)(a), the legislature states that its purpose in evaluating teachers and other personnel is to “increasef ] student learning growth by improving the quality of instructional ... services in the public schools of the state....”
In the seminal case defining the parameters of the nondelegation doctrine, Askew v. Cross Key Waterways, the statute allowed the Administrative Commission to select certain areas of the state for more stringent environmental, economic and growth regulations, and by doing so, gave the Commission unbridled discretion to choose large areas of the state for these *593 more stringent regulations. 372 So.2d 913 (Fla.1978). The court emphasized that the statute was deficient, because it would not be subject to meaningful judicial review. Id. at 918-19. The court further emphasized that while a law can allow an agency to “flesh out” a legislative policy under Article II, section 3, that law cannot allow the agency to “flesh out” what it has “first conceived”; that is, the statute will not pass constitutional muster if it allows the agency the unfettered discretion to enact policy and then implement that policy. Id. at 920.
Here, the statute does not confer on the Board of Education the power to “conceive” or enact the policy. Quite the opposite. Rather, the Board is directed to implement a detailed teacher evaluation plan that includes standardized test scores.
In addition to our own precedent in Turlington and the test established under Cross Key Waterways, under the authority of Avatar Development Corporation v. State, 723 So.2d 199 (Fla.1998), Brown v. Apalachee Regional Planning Council, 560 So.2d 782 (Fla.1990), and Microtel, Inc. v. Florida Public Service Commission, 464 So.2d 1189 (Fla.1985), this statute passes constitutional muster.
In Brown, the supreme court recognized that under the nondelegation doctrine, the legislature may delegate certain decisions to administrative agencies, where “given the highly technical nature of the, [Development of Regional Impact] review process, details relating to the imposition of a cost-based review fee can be viewed as a technical matter of implementation rather than a fundamental policy decision.” 560 So.2d at 785 (emphasis added). This is a pragmatic view which properly shows respect to the legislative branch, which cannot be expected to include every technical aspect in a complex act. The statute here certainly qualifies for this deference. Furthermore, section 1012.34, Florida Statutes, provides the Board of Education with detailed parameters to implement the student learning growth criterion for teacher evaluations. The legislature, not the Board of Education, directed that this criterion include standardized test results, annual student improvement, and non-standardized data utilized by local school boards.
Whether the statute could assign more instructions to the Board is not the test for this court to apply. Rather, the well-established test is whether the statute confers “unfettered discretion” and fundamental policy decisions on an agency of the executive branch. See Avatar, 723 So.2d at 202. This statute does not.
The supreme court’s decision in Avatar is particularly instructive, as that decision rejected a nondelegation argument, where the statute at issue imposed criminal liability based on a violation of a permit issued by the Department of Environmental Protection. 723 So.2d at 199. There, the appellant argued that the statute violated the separation of powers, because it conferred the power to define the crime on DEP, which defines and imposes permit conditions. Id. at 202-03. In rejecting the appellant’s arguments, the supreme court reiterated what it held in Cross Key Waterways and Brown, that “the sufficiency of adequate standards depends on the complexity of the subject matter and the ‘degree of difficulty involved in articulating finite standards.’” Avatar, 723 So.2d at 207. Here, the legislature did not confer unbridled discretion on the Board of Education to define student learning growth, but specified factors or tools the Board of Education must and may utilize to define this critical component of the statutory plan. Thus, the legislature made the fundamental policy decision and properly allowed the Board of Education to imple *594 ment the technical aspects of that policy-decision.
In Microtel, the supreme court upheld a statute that directed the Public Service Commission to authorize intrastate long distance telephone service against a non-delegation claim. 464 So.2d at 1191. As the court noted, “the legislature made the ‘fundamental and primary policy decision’ that there be competition in long distance telephone service.” Id. The statute at issue delegated to the Public Service Commission the duty to determine the qualifications of the applicant, “which may include a detailed inquiry into the ability of the applicant to provide service, a detailed inquiry into the territory and facilities involved, and a detailed inquiry into the existence of service from other sources....” Id. at n. 1. The statute did not limit the Public Service Commission from requiring other information from the applicant; in fact, the statute did not even mandate that the Public Service Commission require the above information, stating that the Commission “may” require such information from the applicant. There, the legislature conferred broad discretion on the Public Service Commission, just as the statute here confers broad discretion on the Board of Education. But in neither case did the legislature violate Article II, section 3 of the Florida Constitution by delegating fundamental policy decisions.
The decisions finding a violation of the nondelegation doctrine are readily distinguishable from the statute here. In Florida Department of State, Division of Elections v. Martin, 916 So.2d 763 (Fla.2005), for example, the statute at issue gave the Department of State no direction or guidance in deciding whether to allow a candidate’s withdrawal from consideration. In fact, that statute provided, “The Department of State may in its discretion allow such a candidate to withdraw after the 4.2nd day before an election upon receipt of a written notice, sworn to under oath, that the candidate will not accept the nomination or office for which he or she qualified.” Id. at 767 (italicized emphasis supplied; bolded emphasis added). As the supreme court recognized, this statute “does not articulate any factors to be considered in determining whether withdrawal should be granted or denied, nor does it indicate the legislative purpose to be served....” Id. at 771.
Here, the discretion granted to the Board of Education is guided by a detailed direction from the legislature, in addition to stated policies designed to improve teacher and student performance. The legislature does not attempt to delegate its core policy functions.
The trial court’s opinion upholding the constitutionality of the Student Success Act is AFFIRMED.
LEWIS, C.J., ROBERTS, WETHERELL, ROWE, MARSTILLER, RAY, SWANSON, MAKAR and BILBREY, JJ., concur.
MAKAR, J., concurs in an opinion in which THOMAS, J., joins.
BENTON, J., dissents in an opinion in which WOLF and CLARK, JJ., join.
PADOVANO and OSTERHAUS, JJ., recused.

. Chap. 2011-1, Laws of Fla.; § 1012.34, Fla. Stat. (2011). In addition to their claim that the statute violated the separation of powers provision of Article II, section 3 of the Florida Constitution, Appellants also challenged the statute's constitutionality under Article I, section 6 of the Florida Constitution, as a violation of their right to engage in collective bargaining; this was also rejected by the trial court, and that ruling is not challenged on appeal.

. The Commissioner of Education approved a formula for measuring student learning growth, and the State Board of Education initiated .rulemaking to implement the formula, but no rule has yet been adopted.