WETHERELL, J.
 

 The Florida Elections Commission (Commission) seeks review of a final order invalidating Florida Administrative Code Rule 2B-1.002. The Commission argues that the Administrative Law Judge (ALJ) erred in concluding that the rule both exceeds the Commission’s grant of rulemaking authority and contravenes the law being implemented. We agree and, therefore, reverse the final order.
 

 The Commission found probable cause to believe that Appellee knowingly and willfully accepted two campaign contributions in excess of $500 in violation of section 106.19(l)(a), Florida Statutes (2007). Appellee disputed the alleged violations and requested an administrative hearing, and he also filed a petition with the Division of Administrative Hearings (DOAH) challenging the validity of the Commission rule that defines the terms “willful” and “willfully” for purposes of chapter 106.
 
 [1]
 
 The challenged rule provides:
 

 For purposes of imposing a civil penalty for violating Chapter 104 or 106, F.S., the following definitions shall apply:
 

 
 *11
 
 (1) A person acts “willful” or “willfully” when he or she knew that, or showed reckless disregard for whether his or her conduct was prohibited or required by Chapter 104 or 106, F.S.
 

 (2) “Knew” means that the person was aware of a provision of Chapter 104 or 106, F.S., understood the meaning of the provision, and then performed an act prohibited by the provision or failed to perform an act required by the provision.
 

 (3) “Reckless disregard” means that the person disregarded the requirements of Chapter 104 or 106, F.S., or was plainly indifferent to its requirements, by failing to make any reasonable effort to determine whether his or her acts were prohibited by Chapter 104 or 106, F.S., or whether he or she failed to perform an act required by Chapter 104 or 106, F.S.
 

 Fla. Admin. Code R. 2B-1.002. The “rule-making authority” cited for the rule is section 106.26; the “law implemented” by the rule is section 106.25(3).
 

 The case was submitted to the ALJ for disposition based upon stipulated facts, proposed final orders, legal memoranda, and oral argument. The ALJ entered a final order finding the rule to be an invalid exercise of delegated legislative authority under section 120.52(8)(b) and (c), Florida Statutes (2009). The ALJ determined that the statutory grant of rulemaking authority relied on by the Commission for the rule did not contain “ ‘explicit’ statutory authority to define ‘willful’ or ‘willfulness.’ ” The ALJ further determined that the rule modifies or contravenes the law purportedly being implemented because the Legislature had previously repealed a statutory definition of willfulness, and “[b]y imposing its definition of ‘willfulness,’ [the Commission] challenges the Legislature’s decision to remove the definition from the statute.”
 

 On appeal, the Commission contends that it had the rulemaking authority necessary to adopt the rule. The Commission further contends that notwithstanding the repeal of the statutory definition of willfulness, the rule does not contravene the law being implemented by the rule. Each point will be discussed in turn.
 

 Rulemaking Authority
 

 Section 120.52(8)(b) provides that a rule is an invalid exercise of delegated legislative authority if “[t]he agency has exceeded its grant of rulemaking authority.” Additionally, the so-called “flush left” paragraph at the end of section 120.52(8) provides:
 

 A grant of rulemaking authority is necessary but not sufficient to allow an agency to adopt a rule; a specific law to be implemented is also required. An agency may adopt only rules that implement or interpret the specific powers and duties granted by the enabling statute. No agency shall have authority to adopt a rule only because it is reasonably related to the purpose of the enabling legislation and is not arbitrary and capricious or is within the agency’s class of powers and duties, nor shall an agency have the authority to implement statutory provisions setting forth general legislative intent or policy. Statutory language granting rulemaking authority or generally describing the powers and functions of an agency shall be construed to extend no further than implementing or interpreting the specific powers and duties conferred by the enabling statute.
 

 Accord
 
 § 120.536(1), Fla. Stat. In construing this language, we explained that:
 

 the authority for an administrative rule is not a matter of degree. The question is whether the statute contains a specific
 
 *12
 
 grant of legislative authority for the rule, not whether the grant of authority is specific
 
 enough.
 
 Either the enabling statute authorizes the rule or it does not.
 

 Sw. Fla. Water Mgmt. Dist. v. Save the Manatee Club, Inc.,
 
 773 So.2d 594, 599 (Fla. 1st DCA 2000) (emphasis in original);
 
 see also Fla. Bd. of Medicine v. Fla. Academy of Cosmetic Surgery, Inc.,
 
 808 So.2d 243, 254 (Fla. 1st DCA 2002) (stating that “the degree of specificity of the grant of [rulemaking] authority is irrelevant”);
 
 Bd. of Trs. of the Internal Improvement Trust Fund v. Day Cruise Ass’n, Inc.,
 
 794 So.2d 696, 700 (Fla. 1st DCA 2001) (“[A]gencies have rulemaking authority only where the legislature has enacted a specific statute, and authorized the agency to implement it....”).
 

 In 2008, the Legislature amended section 120.52 to add a definition of “rulemak-ing authority.”
 
 See
 
 Ch. 2008-104, § 2, Laws of Fla. This term, which had not previously been defined in chapter 120, was defined to mean “statutory language that
 
 explicitly
 
 authorizes or requires an agency to adopt, develop, establish, or otherwise create any statement coming within the definition of the term ‘rule.’ ” § 120.52(17), Fla. Stat. (emphasis added).
 

 In the final order, the ALJ initially characterized this new definition as a “further emphasis” of the restrictive rulemaking standard recognized in
 
 Day Cruise Association.
 
 However, by focusing on the word “explicitly” in determining that the grant of rulemaking authority relied on by the Commission did not provide the requisite authority for the challenged rule, it appears that the ALJ actually construed section 120.52(17) as a further restriction on agency rulemaking authority, rather than a mere codification, for emphasis, of the restrictions in existing law. This was error.
 

 There is nothing in the language of section 120.52(17) or its legislative history suggesting an intent to further restrict agency rulemaking authority beyond what was already expressed in the “flush left” paragraph in section 120.52(8), as construed by this court in
 
 Save the Manatee Club
 
 and subsequent cases. The use of the word “explicitly” in section 120.52(17) is consistent with the settled principle that agencies do not have
 
 implicit
 
 authority to adopt rules,
 
 [2]
 
 and the legislative history explains only that section 120.52 was amended to define terms that “are not currently defined.”
 
 See
 
 Fla. Sen. Transp. & Econom. Dev. Approp. Comm. Staff Analysis for CS/CS/SB 704, at 8 (Apr. 15, 2008);
 
 and cf.
 
 Lawrence E. Sellers,
 
 The 2008 Amendments to the APA: The Open Government Act,
 
 82 Fla. Bar J. 43, 46 (Dec. 2008) (explaining that the definition of “rulemaking authority” was merely intended to clarify that agencies have the authority to adopt rules in accordance with chapter 120 “where the statutory language directs or authorizes them to ‘adopt policies’ or ‘establish criteria’ or the like, even though the word ‘rule’ is not used in the authorizing statute”).
 

 We are confident that had the Legislature intended section 120.52(17) to impose new and additional restrictions on agency rulemaking authority, there would be some indication of that intent in the legislative history and contemporaneous commentary, as was the case with the 1996 and 1999 amendments to section 120.52(8).
 
 See Day Cruise Ass’n,
 
 794 So.2d at 699-700 (referring to the extensive commen
 
 *13
 
 tary on those amendments). Absent such, we conclude that the definition of “rule-making authority” in section 120.52(17) was merely intended to codify existing law. The words “explicit” and “specific” are interchangeable,
 
 [3]
 
 and thus, the statute defining rulemaking authority as “statutory language that explicitly authorizes ... an agency to adopt [a rule]” is no different than our holding in
 
 Save the Manatee Club
 
 that a “specific grant of legislative authority” is required for an agency to adopt a rule. Accordingly, the question remains whether the statutory grant of rulemaking authority is specific (or explicit), not whether it is specific (or explicit)
 
 enough.
 

 Here, the statute cited by the Commission as rulemaking authority for rule 2B-1.002 provides in pertinent part: “The commission shall, pursuant to rules adopted and published in accordance with chapter 120, consider all sworn complaints filed with it and all matters reported to it by the Divisions of Elections.” § 106.26(1), Fla. Stat. The Commission contends that this statute provides the requisite authority for the rule because its duty to “consider” sworn complaints necessarily involves an evaluation of whether the conduct alleged in the complaint amounts to a “willful” violation of chapter 106. We agree.
 

 The Commission has jurisdiction to investigate and determine violations of chapter 106. § 106.25(1), Fla. Stat. The Commission is required to investigate alleged violations upon receipt of a sworn complaint. § 106.25(2), Fla. Stat. If the Commission’s executive director determines that the complaint is legally sufficient, the Commission conducts an investigation to determine whether there is “probable cause to believe that a violation has occurred.” § 106.25(4), Fla. Stat. If the Commission finds probable cause, the alleged violator may elect to have a hearing before the Commission or may elect to resolve the complaint by consent order. § 106.25(5), Fla. Stat. If neither election is made within 30 days of the finding of probable cause, the matter is referred to DOAH for a proceeding in which the final order is issued by an ALJ, not the Commission.
 
 Id.; see also Fla. Elections Comm’n v. Davis,
 
 44 So.3d 1211 (Fla. 1st DCA 2010) (discussing the 2007 amendments to section 106.25(5) that provided DOAH final order authority in cases involving violations of chapter 106).
 

 Appellee is correct that the Commission’s role in determining violations of chapter 106 is more limited now than it was before final order authority in such cases was transferred to DOAH. However, the Commission is still required to evaluate the willfulness of the alleged violation as part of its duty to “consider” sworn complaints and determine whether there is probable cause to believe that a statutory violation has occurred. This necessarily requires the Commission to interpret and apply the term “willful” because section 106.25(3) provides that, for purposes of the Commission’s jurisdiction, “a violation shall mean the willful performance of an act prohibited by this chapter ... or the willful failure to perform an act required by this chapter....”
 

 In sum, because section 106.26(1) specifically authorizes the Commission to adopt rules pursuant to which it will “consider” sworn complaints, and because an evalua
 
 *14
 
 tion of “willfulness” is a necessary component of the consideration of the complaint, we conclude that the rule defining “willful” clearly falls within the rulemaking authority provided by this statute. Accordingly, the Commission did not exceed its grant of rulemaking authority in adopting rule 2B-1.002, and the ALJ erred in declaring the rule invalid under section 120.52(8)(b).
 

 Law Implemented
 

 Section 120.52(8)(c) provides that a rule is an invalid exercise of delegated legislative authority if it “enlarges, modifies, or contravenes the specific provisions of the law implemented.... ” The “law implemented” is the “language of the enabling statute being carried out or interpreted by an agency through rulemaking.” § 120.52(9), Fla. Stat.
 

 Here, the law being implemented by rule 2B-1.002 is section 106.25(3), which provides:
 

 For the purposes of commission jurisdiction, a violation shall mean the willful performance of an act prohibited by this chapter or chapter 104 or the willful failure to perform an act required by this chapter or chapter 104.
 
 Willfulness is a determination of fact;
 
 however, at the request of the respondent, willfulness may be considered and determined in an informal hearing before the commission. (emphasis added).
 

 The ALJ determined that the rule contravenes this statute because it prescribes a legal definition of “willful” even though the statute provides that willfulness is a determination of fact.
 

 The last sentence of section 106.25(3), including the language emphasized above, was added to the statute in 2007.
 
 See
 
 ch. 2007-30, § 48, Laws of Fla. In the same act, the Legislature repealed section 106.37, which defined “willfulness” for purposes of chapter 106.
 
 [4]
 

 Id.
 
 at § 51. The ALJ reasoned that the repeal of the statutory definition was a “clear indication that the Legislature did not perceive a need to define the term, nor did it foresee the necessity of defining ‘willfulness’ by rule.” We cannot agree, as it is equally likely that the Legislature was aware of the definition of “willful” that had been adopted by the Commission by rule pursuant to this court’s suggestion in
 
 Fugate
 
 and, thus, concluded that a statutory definition was no longer needed.
 

 In
 
 Fugate,
 
 we reversed a final order of the Commission that applied the definition of “willfulness” in section 106.37 to an alleged violation of chapter 104.
 
 See
 
 924 So.2d at 75. We explained that section 106.37, by its clear terms, only applied to proceedings under chapter 106, and that “[i]n the absence of a statute or a properly promulgated rule defining the term, the case-law derived definition used by the ALJ was reasonable.”
 
 Id.
 
 at 75-76. But we also stated (albeit in dicta) that “[t]he Commission may promulgate by rule a definition of ‘willful’ to be applied to alleged violations of Chapter 104.”
 
 Id.
 
 at 76.
 

 
 *15
 
 Shortly after
 
 Fugate,
 
 the Commission adopted rule 2B-1.002. The rule was patterned after the statutory definition of “willfulness” in section 106.37, but it initially applied only to proceedings under chapter 104. The rule was upheld in a prior rule challenge proceeding.
 
 See Oliphant, supra.
 
 As observed by the ALJ in that case, the definition adopted in rule 2B-1.002 “is not in any way unusual or extraordinary,”
 
 id.
 
 at 37, and “[b]y exercising its rulemaking authority to define what constitutes a ‘willful’ violation of Chapter 104, Florida Statutes, [[the Commission]] has ‘provide[d] fair notice to affected persons’ of what definitional ‘standard’ it will apply to determine willfulness ... thereby ‘closing] the gap between what [[the Commission]] and its staff know about [[its]] law and policy and what an outsider can know.”
 
 Id.
 
 at 32-33 (quoting
 
 Peoples Bank v. State,
 
 395 So.2d 521, 525 (Fla.1981)).
 

 With this background in mind, we turn to the issue framed by the ALJ’s ruling: whether the Commission’s adoption of a rule defining “willful” contravenes the language in section 106.25(3) providing that “[w]illfulness is a determination of fact.” We conclude that it does not.
 

 Unlike the ALJ and Appellee, we do not construe the repeal of section 106.37 and the amendments to section 106.25(3) as either a legislative prohibition against the adoption of a definition of “willful” by rule or an indication of a legislative preference that there not be a uniform standard against which alleged violations of chapter 106 would be judged. Rather, we view these changes as merely codifying existing law that the determination of willfulness is to be made by the fact-finder based upon the evidence.
 
 See Fugate,
 
 924 So.2d at 76 (“Willfulness is a question of fact ....”) (quoting
 
 McGann v. Fla. Elections Comm’n,
 
 803 So.2d 763, 764 (Fla. 1st DCA 2001));
 
 see also Beardslee v. Fla. Elections Comm’n,
 
 962 So.2d 390, 393 (Fla. 5th DCA 2007);
 
 Guetzloe v. Fla. Elections Comm’n,
 
 927 So.2d 942, 945 (Fla. 5th DCA 2006). Moreover, in light of the clear, long-standing legislative preference that agency policies be expressed in rules,
 
 [5]
 
 it seems unlikely that the Legislature would have intended that the legal definition of “willful” be developed through adjudication.
 

 In any event, we see no inconsistency between the language in section 106.25(3) and the adoption of a definition of “willful” by rule. The rule simply defines the legal standard that will be applied by the fact-finder, whether that is the Commission in determining probable cause or the ALJ in determining whether the violation was proven at the hearing. The adoption of the legal standard by rule does not contravene section 106.25(3) because the fact-finder’s determination of whether the legal standard has been met will be made based upon the evidence presented in each case. Accordingly, because rule 2B-1.002 does not contravene the statute it implements, the ALJ erred in declaring the rule invalid under section 120.52(8)(c).
 

 Conclusion
 

 Based upon the foregoing, we reverse the final order invalidating rule 2B-1.002.
 

 REVERSED.
 

 DAVIS and THOMAS, JJ., concur.
 

 [1]
 

 . The petition focused on the Commission's authority to adopt the rule, not any deficiency in the substance of the rule, and Appellee asserted in his brief and at oral argument that the definition of "willful” in the rule is essentially the same as the common law definition that would be applied in the absence of a statutory or rule definition.
 
 Cf. Fugate v. Fla. Elections Comm’n,
 
 924 So.2d 74, 75 (Fla. 1st DCA 2006) (approving the use of a case-law derived definition that "a willful act” is one that is "voluntary and intentionally performed with specific intent and bad purpose to violate or disregard the requirements of the law”);
 
 Oliphant v. Fla. Elections Comm’n,
 
 Case No. 06-2886RX, at 40 (DOAH Oct. 24, 2006) (noting that although the standard in rule 2B-1.002 "is not identical to the
 
 Fugate
 
 definition (with its 'specific intent' standard), it is its substantial equivalent”),
 
 dismissed as moot,
 
 951 So.2d 90 (Fla. 1st DCA 2007).
 

 [2]
 

 .
 
 See, e.g., Day Cruise Ass’n,
 
 794 So.2d at 700-01 (explaining that agencies are creatures of statute with only those powers conferred by statute and that statutory provisions delegating rulemaking authority must be interpreted in light of the significant restrictions on such authority contained in the "flush left” paragraph in section 120.52(8)).
 

 [3]
 

 . As we observed in
 
 Save the Manatee Club
 
 when construing the phrase “specific powers and duties” in section 120.52(8), "the ordinary meaning of the term 'specific’ is ‘limiting or limited; specifying or specified; precise, definite, [or]
 
 explicit’"
 
 773 So.2d at 599 (quoting
 
 Webster’s New World College Dictionary
 
 1287 (3rd Ed. 1996)) (emphasis added);
 
 see also id.
 
 (explaining that "the authority to adopt an administrative rule must be based on an
 
 explicit
 
 power or duty identified in the enabling statute”) (emphasis added).
 

 [4]
 

 . Prior to its repeal, section 106.37 provided:
 

 A person willfully violates a provision of this chapter if the person commits an act while blowing that, or showing reckless disregard for whether, the act is prohibited under this chapter, or does not commit an act while knowing that, or showing reckless disregard for whether, the act is required under this chapter. A person knows that an act is prohibited or required if the person is aware of the provision of this chapter which prohibits or requires the act, understands the meaning of that provision, and performs the act that is prohibited or fails to perform the act that is required. A person shows reckless disregard for whether an act is prohibited or required under this chapter if the person wholly disregards the law without making any reasonable effort to determine whether the act would constitute a violation of this chapter.
 

 § 106.37, Fla. Stat. (2006).
 

 [5]
 

 .
 
 See generally Dept. of Highway Safety & Motor Vehicles v. Schluter,
 
 705 So.2d 81, 85-86 (Fla. 1st DCA 1997).