IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

UNITED FACULTY OF
FLORIDA,

      Appellant,

v.

FLORIDA STATE BOARD OF
EDUCATION,

      Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D14-188

Opinion filed February 16, 2015.

An appeal from Division of Administrative Hearings. June C. McKinney, Administrative Law Judge

Thomas W. Brooks and Anthony D. Demma of Meyer, Brooks, Demma and Blohm, P.A., Tallahassee, for Appellant.

Matthew Carson, General Counsel, and David L. Jordan, Assistant General Counsel, Tallahassee, for Appellee.

WETHERELL, J.

      United Faculty of Florida (UFF) appeals the final administrative order dismissing its petition challenging the validity of Florida Administrative Code

Rule 6A-14.0411 (the challenged rule) as amended by the State Board of Education (Board) in April 2013. UFF raises two issues. First, UFF contends that the administrative law judge (ALJ) erred in concluding that the challenged rule is not an invalid exercise of delegated legislative authority under section 120.52(8)(b), Florida Statutes (2012).[1] Second, UFF contends that the "statutory framework" pursuant to which the challenged rule was adopted violates the nondelegation doctrine embodied in article II, section 3, of the Florida Constitution. We find no merit in either claim. Accordingly, we affirm the final order.

The challenged rule establishes standards and criteria for "continuing contracts" with full-time faculty members employed by Florida College System institutions. Continuing contracts, which are viewed as a form of tenure, have been prescribed by Board rule in some form since at least 1979, and the prior version of the challenged rule had been in effect since 2004. The challenged rule substantially revises the prior version of the rule and, among other things, increases the period of satisfactory service necessary for an employee to obtain a continuing contract from three years to five years; prescribes specific performance criteria to be used in determining whether to award or terminate a continuing contract; requires periodic performance reviews of employees working under continuing

---

[1] UFF does not challenge the ALJ's ruling that the challenged rule is not invalid under section 120.52(8)(c) or (8)(d).

2

contracts; requires each college to develop criteria to measure "student success" and requires those criteria to be used in the employee's performance review; and authorizes each college to establish positions that are eligible for multiple-year contracts rather than continuing contracts. UFF contends that the Board lacked the requisite statutory authority to adopt the challenged rule.

The statutes cited as the "rulemaking authority" for the challenged rule are sections 1001.02(1) and (6), 1012.83, and 1012.855. The ALJ concluded that sections 1012.83 and 1012.855 do not provide the requisite authority for the challenged rule, but that "section 1001.02(6) provides rulemaking authority for the challenged rule by meeting the 'specific grant of authority' test set forth in [Southwest Florida Water Management District v.] Save the Manatee [Club, Inc., 773 So. 2d 594 (Fla. 1st DCA 2000)]." We agree with the ALJ on the latter point, but not the former.

A rule is invalid under section 120.52(8)(b) if the agency "exceed[s] its grant of rulemaking authority." A grant of rulemaking authority is the "statutory language that explicitly authorizes or requires an agency to adopt [a rule]." § 120.52(17), Fla. Stat. The scope of an agency's rulemaking authority is constrained by section 120.536(1) and the so-called "flush-left paragraph" in section 120.52(8), which provide that an agency may only adopt rules to "implement or interpret the specific powers and duties granted by the [agency's]

3

enabling statute"; that an agency may not adopt rules to "implement statutory provisions setting forth general legislative intent or policy" or simply because the rule "is reasonably related to the purpose of the enabling legislation and is not arbitrary and capricious or is within the agency's class of powers and duties"; and that "[s]tatutory language granting rulemaking authority or generally describing the powers and functions of an agency shall be construed to extend no further than implementing or interpreting the specific powers and duties conferred by the enabling statute."

Section 120.536(1) and the flush-left paragraph in section 120.52(8) require a close examination of the statutes cited by the agency as authority for the rule at issue to determine whether those statutes explicitly grant the agency authority to adopt the rule. As this court famously stated in Save the Manatee Club, the question is "whether the statute contains a specific grant of legislative authority for the rule, not whether the grant of authority is specific enough. Either the enabling statute authorizes the rule at issue or it does not." 773 So. 2d at 599 (emphasis in original). Accord Bd. of Trs. of the Internal Improvement Trust Fund v. Day Cruise Ass'n, Inc., 794 So. 2d 696, 700 (Fla. 1st DCA 2001) ("[A]gencies have rulemaking authority only where the legislature has enacted a specific statute, and authorized the agency to implement it . . . ."); see also Fla. Elections Comm'n v. Blair, 52 So. 3d 9, 12-13 (Fla. 1st DCA 2010) (explaining that the definition of

4

"rulemaking authority" in section 120.52(17) does not further restrict agency rulemaking authority beyond what is contained in the flush-left paragraph in section 120.52(8), as construed by this court in <u>Save the Manatee Club</u> and subsequent cases).

Here, based upon our <u>de</u> <u>novo</u> review,[2] we conclude that the statutes cited as rulemaking authority for the challenged rule contain the necessary "specific grant of legislative authority" for the Board to adopt a rule establishing standards and criteria for tenure-like contracts with college faculty. Section 1001.02(6) specifically directs the Board to adopt rules establishing "minimum **standards**, definitions and **guidelines**" for, among other things, "personnel" and "contracting." Section 1012.83(1) specifically provides that each college instructional employee "shall be entitled to a **contract** as provided by **rules of the [Board]**" and section 1012.855(1)(a) specifically provides that the employment of college personnel shall be "subject to . . . the **rules of the [Board]** relative to certification, **tenure**, leaves of absences of all types, including sabbaticals, remuneration, and such other **conditions of employment** as the [Board] deems necessary and proper." Although these latter two statutes are not phrased as affirmative directives to the Board, they clearly indicate that the Legislature intended that the Board adopt rules concerning employment contracts for college

---

[2] <u>See</u> <u>Save the Manatee Club</u>, 773 So. 2d at 597 ("Because the case involves a pure issue of law, we review the order by the de novo standard of review.").

5

instructional personnel and that such rules address "tenure" and other terms and conditions of employment. See State Bd. of Educ. v. Nelson, 372 So. 2d 114 (Fla. 1st DCA 1979) (construing the statutory language now codified in section 1012.855(1)(a) as a grant of rulemaking authority to the Board). Contrary to the position advocated by the dissent, it is not necessary under Save the Manatee Club and its progeny for the statutes to delineate every aspect of tenure that the Board is authorized to address by rule;[3] instead, all that is necessary is for the statutes to specifically authorize the Board to adopt rules for college faculty contracts and tenure, which the statutes clearly do.

The statutes cited above, collectively and in conjunction with section 1001.02(1),[4] provide the Board the necessary rulemaking authority to adopt the challenged rule. Accordingly, although we do not fully agree with the ALJ's reasoning, we agree with (and affirm) her ruling that the challenged rule is not an invalid exercise of delegated legislative authority under section 120.52(8)(b). See generally Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638, 644-45

---

[3] If this was the standard, it is questionable whether the Board would have the authority to adopt any rule providing for continuing contracts. This result would be unfortunate – and, presumably, unwanted by UFF – because continuing contracts have been used in Florida for decades to provide job security for college faculty.

[4] This statute, which authorizes the Board to "adopt rules . . . to implement the provisions of law conferring duties upon it for the improvement of the state system of K-20 public education except for the State University System," is a general grant of rulemaking authority that is insufficient by itself to provide the requisite authority for the challenged rule. See §§ 120.52(8), 120.536(1), Fla. Stat.

(Fla. 1999) (discussing the "tipsy coachman" doctrine pursuant to which the appellate court is obligated to affirm the order on appeal if the lower tribunal reached the correct result, even its reasoning was erroneous).

Turning to UFF's claim that the "statutory framework" pursuant to which the challenged rule was adopted violates the nondelegation doctrine, we begin with the seminal case of Askew v. Cross Key Waterways, 372 So. 2d 913 (Fla. 1978), in which the Court explained that the nondelegation doctrine requires that:

> fundamental and primary policy decisions shall be made by members of the legislature who are elected to perform those tasks, and administration of legislative programs must be pursuant to some minimal standards and guidelines ascertainable by reference to the enactment establishing the program.

Id. at 925; see also Brown v. Apalachee Reg'l Planning Council, 560 So. 2d 782, 784 (Fla. 1990) (explaining that the nondelegation doctrine "arises from article II, section 3, of the Florida Constitution" and "essentially prohibits the legislature from delegating to another branch the power to enact a law or to declare what the law shall be") (internal quotations omitted). This standard does not require statutes to contain a particular level of detail so long as the statutes contain sufficient standards and guidelines to enable the agency and the courts to determine whether the agency is carrying out the Legislature's intent. See Dep't of State v. Martin, 916 So. 2d 763, 773 (Fla. 2005) ("In Askew we recognized that the specificity of standards and guidelines may depend on the subject matter dealt with and the

7

degree of difficulty involved in articulating finite standards. However, we have also made clear that even where a general approach would be more practical than a detailed scheme of legislation, enactments may not be drafted in terms so general and unrestrictive that administrators are left without standards for the guidance of their official acts.") (internal quotations omitted).

Here, the "statutory framework" pursuant to which the challenged rule was adopted reflects that the Legislature made the fundamental policy decision that college instructional employees are entitled to contracts, subject to terms and conditions established by the Board concerning "tenure" and other matters. See §§ 1012.83(1), 1012.855(1)(a), Fla. Stat. And, contrary to UFF's argument, the "statutory framework" contains sufficient standards and guidelines to satisfy the nondelegation doctrine.

For example, in section 1001.02(6), the Legislature mandated that the minimum standards for personnel and contracting adopted by the Board must "ensure [1] the quality of education, [2] coordination among the Florida College System institutions and state universities, and [3] efficient progress toward accomplishing the Florida College System mission [in section 1004.65]." Section 1004.65, in turn, provides that the college system's mission is to "provide high-quality . . . education," "foster a climate of excellence," and provide student

8

assessment and other services to "ensure student success." These (and other[5])

statutes individually and collectively provide sufficient standards and guidelines

against which the rules adopted by the Board can be evaluated for compliance with

legislative intent.

We recognize that in the K-12 context, the standards and criteria for

contracts with instructional employees, including continuing contracts, are

established by statute along with the standards and procedures for evaluating the

performance of those employees. See §§ 1012.33 - 1012.3401, Fla. Stat. That,

however, has no bearing on the validity of the "statutory framework" at issue in

this case. The fact that the Legislature has chosen to enact more specific statutes in

one context does not mean that it cannot enact more general statutes in another

context (particularly one as complex as higher education employment) so long as

the more general statutes provide sufficient standards and guidelines to comply

with the nondelegation doctrine.

Finally, we have not overlooked UFF's argument that the challenged rule

effectuates significant policy changes that should have come from the Legislature

in the first instance. This argument is not persuasive because even though the

applicable statutes have not been amended since the adoption of the prior version

---

[5] See, e.g., § 1000.02, Fla. Stat. (establishing the legislative policies and guiding principles for Florida's K-20 education system), § 1000.03(4)-(5), Fla. Stat. (establishing the mission and priorities of Florida's K-20 education system).

of the challenged rule in 2004, this court explained in <u>Agency for Health Care Administration v. Florida Coalition of Professional Laboratory Organizations</u>, 718 So. 2d 869 (Fla. 1st DCA 1998), that a statutory amendment is not required for an agency to substantively change its rules where, as here, the Legislature has clearly delegated the agency authority to adopt rules on the issue and the agency complies with the rulemaking process. Of course, if the Legislature believes that the new standards and criteria for continuing contracts for college faculty that are embodied in the challenged rule are too onerous or do not comport with its intent, it is free to legislate accordingly.

In sum, for the reasons stated above, we affirm the final order dismissing UFF's petition challenging the validity of rule 6A-14.0411 and we reject UFF's contention that the "statutory framework" pursuant to which the rule was adopted violates the nondelegation doctrine.

AFFIRMED.

MAKAR, J., CONCURS. CLARK, J., DISSENTS WITH OPINION.

CLARK, J., dissenting.

I respectfully dissent.

Rule 6A-14.0411, Florida Administrative Code, is an invalid exercise of legislative power. The rule constitutes a comprehensive and wide-ranging policy creating continuing contracts (tenure) for some faculty—as designated in the rule—at State colleges. The parties agree that continuing contracts are the equivalent of tenure. The enabling legislation does not *explicitly* authorize the State Board of Education (SBE) to determine by rule 1) whether certain faculty members at State colleges and universities should be issued continuing contracts (the equivalent of tenure); 2) whether certain faculty members may not be issued continuing contracts; 3) the eligibility requirements, qualifications and performance criteria for continuing contracts; 4) the procedures and processes by which continuing contracts can be earned, retained, or terminated; 5) which exemptions are appropriate for transitioning continuing contracts; or 6) the maximum length or duration of continuing contracts. The lack of explicit legislative authorization for the adoption of this comprehensive rule is fatal to its validity.

Sections 1012.83 and 1012.855, Florida Statutes, do not provide authority for the adoption of rule 6A-14.0411. The rule was not properly adopted under a

11

grant of authority in section 1001.02(6), as the enabling statute lacks the specific authority for the adopted rule.

The grant of authority in section 1001.02(6) is a general grant of authority for the SBE to "prescribe minimum standards, definitions and guidelines for Florida College System institutions that will ensure the quality of education, coordination among the Florida College System institutions and state universities, and efficient progress toward accomplishing the Florida College System mission. At a minimum the rule must address (a) personnel, and (b) contracting." Section 1001.02(6), sets forth what subjects the SBE is to address in its rulemaking, but does not explicitly authorize the SBE to determine qualifications, eligibility, criteria, processes, limitations or duration for continuing contracts.

This Court has determined that "the authority to adopt an administrative rule must be based on an *explicit* power or duty identified in the enabling statute." Sw. Water Mgmt. Dist. v. Save the Manatee Club, 773 So. 2d 594, 599 (Fla. 1st DCA 2000). Accordingly, a general grant of authority to address a subject does not provide valid exercise of delegated legislative authority.

Section 120.52(8) provides:

> A grant of rulemaking authority is necessary but not sufficient to allow an agency to adopt a rule; a specific law to be implemented is also required. An agency may adopt only rules that implement or interpret the **specific powers and duties** granted by the enabling statute. No agency shall have authority to adopt a rule only because it is reasonably

12

related to the purpose of the enabling legislation and is not arbitrary and capricious or is within the agency's class of powers and duties, nor shall an agency have the authority to implement statutory provisions setting forth general legislative intent or policy. Statutory language granting rulemaking authority or generally describing the powers and functions of an agency shall be construed to extend no further than implementing or interpreting the specific powers and duties conferred by the enabling statute.

Although this rule is *related* to the subject of the enabling legislation—personnel and contracting—that is insufficient. In amending section 120.52(8) in 1999, the legislature specifically rejected the notion that rulemaking authority is authorized simply because the rule relates to the subject of the legislation. Section 120.52(8) provides that "an agency may adopt only rules that implement or interpret the specific powers and duties granted by the enabling statute." See Save the Manatee Club, 773 So. 2d at 598.

I recognize this Court need not be concerned that the enabling statute is specific *enough*. "Either the enabling statute authorizes the rule at issue or it does not." Id. at 599. But this Court should be deeply concerned that the enabling statute is not at all specific about the SBE developing broad policy for continuing contracts for State university and college faculty. In fact, neither section 1001.02(6) nor any of the statutes referenced in the majority opinion—even when read together—grant any such authority.

13

Because the enabling legislation is not specific and does not explicitly allow the SBE to create public policy on tenure, I would conclude the rule was adopted without appropriate legislative authority.

I would reverse and declare rule 6A-14.0411 invalid.