WETHERELL, J.
United Faculty of Florida (UFF) appeals the final administrative order dismissing its petition challenging the validity of Florida Administrative Code Rule 6A-14.0411 (the challenged rule) as amended by the State Board of Education (Board) in April 2013. UFF raises two issues. First, UFF contends that the administrative law judge (ALJ) erred in concluding that the challenged rule is not an invalid exercise of delegated legislative authority under section 120.52(8)(b), Florida Statutes (2012).[1] Second, UFF contends that the “statutory framework” pursuant to which the challenged rule was adopted violates the nondelegation doctrine embodied in article II, section 8, of the Florida Constitution. We find no merit in either claim. Accordingly, we affirm the final order.
The challenged rule establishes standards and criteria for “continuing contracts” with full-time faculty members employed by Florida College System institutions. Continuing contracts, which are viewed as a form of tenure, have been prescribed by Board rule in some form since at least 1979, and the prior version of the challenged rule had been in effect since 2004. The challenged rule substantially revises the prior version of the rule and, among other things, increases the period of satisfactory service necessary for an employee to obtain a continuing contract from three years to five years; prescribes specific performance criteria to be used in determining whether to award or terminate a continuing contract; requires periodic performance reviews of employees working under continuing contracts; requires each college to develop criteria to measure “student success” and requires those criteria to be used in the employee’s performance review; and authorizes each college to establish positions that are eligible for multiple-year contracts rather than continuing contracts. UFF contends that the Board lacked the requisite statutory authority to adopt the challenged rule.
The statutes cited as the “rulemaking authority” for the challenged rule are sections 1001.02(1) and (6), 1012.83, and 1012.855. The ALJ concluded that sections 1012.83 and 1012.855 do not provide the requisite authority for the challenged rule, but that “section 1001.02(6) provides rulemaking authority for the challenged rule by meeting the ‘specific grant of authority[1] test set forth in [Southwest Florida Water Management District v.] Save the Manatee [Club, Inc., 773 So.2d 594 (Fla. 1st DCA 2000) ].” We agree with the ALJ on the latter point, but not the former.
A rule is invalid under section 120.52(8)(b) if the agency “exceed[s] its grant of rulemaking authority.” A grant of rulemaking authority is the “statutory language that explicitly authorizes or requires an agency to adopt [a rule].” § 120.52(17), Fla. Stat. The scope of an agency’s rulemaking authority is constrained by section 120.536(1) and the so-called “flush-left paragraph” in section 120.52(8), which provide that an agency may only adopt rules to “implement or interpret the specific powers and duties granted by the [agency’s] enabling statute”; that an agency may not adopt rules *517 to “implement statutory provisions setting forth general legislative intent or policy” or simply because the rule “is reasonably related to the purpose of the enabling legislation and is not arbitrary and capricious or is within the agency’s class of powers and duties”; and that “[statutory language granting rulemaking authority or generally describing the powers and functions .of an agency shall be construed to extend no further than implementing or interpreting the specific powers and duties conferred by the enabling statute.”
Section 120.536(1) and the flush-left paragraph in section 120.52(8) require a close examination of the statutes cited by the agency as authority for the rule at issue to determine whether those statutes explicitly grant the agency authority to adopt the rule. As this court famously stated in Save the Manatee Club, the question is “whether the statute contains a specific grant of legislative authority for the rule, not whether the grant of authority is specific enough. Either the enabling statute authorizes the rule at issue or it does not.” 773 So.2d at 599 (emphasis in original). Accord Bd. of Trs. of the Internal Improvement Trust Fund v. Day Cruise Ass’n, Inc., 794 So.2d 696, 700 (Fla. 1st DCA 2001) (“[Ajgencies have rulemak-ing authority only where the legislature has enacted a specific statute, and authorized the agency to implement it ....”); see also Fla. Elections Comm’n v. Blair, 52 So.3d 9, 12-13 (Fla. 1st DCA 2010) (explaining that the definition of “rulemak-ing authority” in section 120.52(17) does not further restrict agency rulemaking authority beyond what is contained in the flush-left paragraph in section 120.52(8), as construed by this court in Save the Manatee Club and subsequent cases).
Here, based upon our de novo review,[2] we conclude that the statutes cited as rulemaking authority for the challenged rule contain the necessary “specific grant of legislative authority” for the Board to adopt a rule establishing standards and criteria for tenure-like contracts with college faculty. Section 1001.02(6) specifically directs the Board to adopt rules establishing “minimum standards, definitions and guidelines” for, among other things, “personnel” and “contracting.”- Section 1012.83(1) specifically provides that each college instructional employee “shall be entitled to a contract as provided by rules of the [Board]” and section 1012.855(l)(a) specifically provides that the employment of college personnel shall be “subject to ... the rules of the [Board] relative to certification, tenure, leaves of absences of all types, including sabbaticals, remuneration, and such other conditions of employment as the [Board] deems necessary and proper.” Although these latter two statutes are not phrased as affirmative directives to the Board, they clearly indicate that the Legislature intended that the Board adopt rules concerning employment contracts for college instructional personnel and that such rules address “tenure” and other terms and conditions of employment. See State Bd. of Educ. v. Nelson, 372 So.2d 114 (Fla. 1st DCA 1979) (construing the statutory language now codified in section 1012.855(l)(a) as a grant of rulemaking authority to the Board). Contrary to the position advocated by the dissent, it is not necessary under Save the Manatee Club and its progeny for the statutes to delineate every aspect of tenure that the Board is authorized to address by rule;[3] instead, all that is necessary is for *518 the statutes to specifically authorize the Board to adopt rules for college faculty contracts and tenure, which the statutes clearly do.
The statutes cited above, collectively and in conjunction with section 1001.02(1),[4] provide the Board the necessary rulemaking authority to adopt the challenged rule. Accordingly, although we do not fully agree with the ALJ’s reasoning, we agree with (and affirm) her ruling that the challenged rule is not an invalid exercise of delegated legislative authority under section 120.52(8)(b). See generally Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 644-45 (Fla.1999) (discussing the “tipsy coachman” doctrine pursuant to which the appellate court is obligated to affirm the order on appeal if the lower tribunal reached the correct result, even its reasoning was erroneous).
Turning to UFF’s claim that the “statutory framework” pursuant to which the challenged rule was adopted violates the nondelegation doctrine, we begin with the seminal case of Askew v. Cross Key Waterways, 372 So.2d 913 (Fla.1978), in which the Court explained that the non-delegation doctrine requires that:
fundamental and primary policy decisions shall be made by members of the legislature who are elected to perform those tasks, and administration of legislative programs must be pursuant to some minimal standards and guidelines ascertainable by reference to the enactment establishing the program.
Id. at 925; see also Brown v. Apalachee Reg’l Planning Council, 560 So.2d 782, 784 (Fla.1990) (explaining that the nondelegation doctrine “arises from article II, section 3, of the Florida Constitution” and “essentially prohibits the legislature from delegating to another branch the power to enact a law or to declare what the law shall be”) (internal quotations omitted). This standard does not require statutes to contain a particular level of detail so long as the statutes contain sufficient standards and guidelines to enable the agency and the courts to determine whether the agency is carrying out the Legislature’s intent. See Dep’t of State v. Martin, 916 So.2d 763, 773 (Fla.2005) (“In Askew we recognized that the specificity of standards and guidelines may depend on the subject matter dealt with and the degree of difficulty involved in articulating finite standards. However, we have also made clear that even where a general approach would be more practical than a detailed scheme of legislation, enactments may not be drafted in terms so general and unrestrictive that administrators are left without standards for the guidance of their official acts.”) (internal quotations omitted).
Here, the “statutory framework” pursuant to which the challenged rule was adopted reflects that the Legislature made the fundamental policy decision that college instructional employees are entitled to contracts, subject to terms and conditions established by the Board concerning “tenure” and other matters. See §§ 1012.83(1), 1012.855(1)(a), Fla. Stat. And, contrary to UFF’s argument, the *519 “statutory framework” contains sufficient standards and guidelines to satisfy the nondelegation doctrine.
For example, in section 1001.02(6), the Legislature mandated that the minimum standards for personnel and contracting adopted by the Board must “ensure [1] the quality of education, [2] coordination among the Florida College System institutions and state universities, and [3] efficient progress toward accomplishing the Florida College System mission [in section 1004.65].” Section 1004.65, in turn, provides that the college system’s mission is to “provide high-quality ... education,” “foster a climate of excellence,” and provide student assessment and other services to “ensure student success.” These (and other[5]) statutes individually and collectively provide sufficient standards and guidelines against which the rules adopted by the Board can be evaluated for compliance with legislative intent.
We recognize that in the K-12 context, the standards and criteria for contracts with instructional employees, including continuing contracts, are established by statute along with the standards and procedures for evaluating the performance of those employees. See §§ 1012.33-1012.3401, Fla. Stat. That, however, has no bearing on the validity of the “statutory framework” at issue in this case. The fact that the Legislature has chosen to enact more specific statutes in one context does not mean that it cannot enact more general statutes in another context (particularly one as complex as higher education employment) so long as the more general statutes provide sufficient standards and guidelines to comply with the nondelegation doctrine.
Finally, we have not overlooked UFF’s argument that the challenged rule effectuates significant policy changes that should have come from the Legislature in the first instance. This argument is not persuasive because even though the applicable statutes have not been amended since the adoption of the prior version of the challenged rule in 2004, this court explained in Agency for Health Care Administration v. Florida Coalition of Professional Laboratory Organizations, 718 So.2d 869 (Fla. 1st DCA 1998), that a statutory amendment is not required for an agency to substantively change its rules where, as here, the Legislature has clearly delegated the agency authority to adopt rules on the issue and the agency complies with the rulemaking process. Of course, if the Legislature believes that the new standards and criteria for continuing contracts for college faculty that are embodied in the challenged rule are too onerous or do not comport with its intent, it is free to legislate accordingly.
In sum, for the reasons stated above, we affirm the final order dismissing UFF’s petition challenging the validity of rule 6A-14.0411 and we reject UFF’s contention that the “statutory framework” pursuant to which the rule was adopted violates the nondelegation doctrine.
AFFIRMED.
MAKAR, J., concurs.
CLARK, J., dissents with opinion.

. UFF does not challenge the ALJ’s ruling that the challenged rule is not invalid under section 120.52(8)(c) or (8)(d).

. See Save the Manatee Club, 773 So.2d at 597 ("Because the case involves a pure issue of law, we review the order by the de novo standard of review.”).

. This statute, which authorizes the Board to “adopt rules ... to implement the provisions of law conferring duties upon it for the improvement of the state system of K-20 public education except for the State University System,” is a general grant of rulemaking authority that is insufficient by itself to provide the requisite authority for the challenged rule. See §§ 120.52(8), 120.536(1), Fla. Stat.

. See, e.g., § 1000.02, Fla. Stat. (establishing the legislative policies and guiding principles for Florida’s K-20 education system), § 1000.03(4)-(5), Fla. Stat. (establishing the mission and priorities of Florida's K-20 education system).